UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 20-CR-60045-RS-1

| | |
|---|---|
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| KERBY BROWN, JR., | ) |
| | ) |
| Defendant. | ) |

_____

**DEFENDANT, KERBY BROWN'S
MOTION FOR PRE-TRIAL RELEASE
BASED ON RISK OF CORONAVIRUS**

**COMES NOW** the Defendant, KERBY BROWN, JR. by and through his undersigned counsel, and presents herewith, his Motion for Pre-trial Release Based on Risk of Coronavirus, and states as follows:

**PROCEDURAL BACKGROUND**

1.  On May 23, 2019, the Defendant was arrested and ultimately charged with Conspiracy to Commit Sex Trafficking of Minors, two counts of Attempted

Sex Trafficking of a Minor, Sex Trafficking of a Minor, and in violation of 18 U.S.C. 1591 and 1594.

2. On June 7, 2019 an Order of Detention was entered by Magistrate Judge Patrick M. Hunt. (See attached copy of order.)

3. As a result, the Defendant has been detained without a bond.

## FACTUAL BASIS FOR THE RELIEF REQUESTED

The Defendant has minimal criminal history. As outlined in the Order of Detention, Mr. BROWN has only one prior arrest, for a felony, which is currently pending. Mr. BROWN has no prior convictions known to the undersigned at this time. Mr. BROWN is a lifelong Broward County resident.

According to the Washington Posts, on today's date, Wednesday, April 1, 2020, nearly 7,000 cases of the novel coronavirus have been reported in the State of Florida, with more than 1,600 in Miami-Dade County alone, and that number will surely grow in the coming weeks. Further, according to the Washington Post, Miami Dade and Broward Counties represent the heaviest concentration of infection.

On CNN's "State of the Union" Sunday morning (March 15, 2020), Dr. Anthony Fauci, Director of the National Institute of Allergy and Infectious

Diseases, said "For a while, life is not going to be the way it used to be in the United States," He further said, "We have to just accept that, if we want to do what's best for the American public."

As of March 24, 2020, there are at least 3 corrections officers that have tested positive in Miami-Dade County. (https://www.miamiherald.com/news/coronavirus/article241484201.html)  As of March 27, 2020, there are at least 4 officers in Broward County that have tested positive.

https://www.local10.com/news/local/2020/03/27/4-broward-sheriffs-office-employees-test-positive-for-new-coronavirus/  It has more recently been reported that seven Florida Department of Corrections employees who work at separate facilities across the state have tested positive for COVID-19, the respiratory illness caused by the novel coronavirus, agency officials said late Friday. These reports indicate that the jail and prison communities are certainly not immune or otherwise uniquely protected from the spread of infection.

Of the 2.3 million incarcerated people in the United States, roughly 165,000 are over the age of 55.  And compared to the general population, people in jail and prison are more likely to have preexisting health conditions such as high blood pressure, asthma, cancer, arthritis and infectious diseases, such as

tuberculosis, hepatitis C and HIV. We are still learning about the coronavirus, but what is known so far is that these two populations are most at risk of falling ill or dying from it. While Mr. BROWN is a young man, it is becoming more clear that individuals of any age who are not self quarantined or otherwise socially distancing themselves from others are also vulnerable. In fact, NBC News reported on just March 31, 2020 that **28 college aged** "spring breakers" who had failed to heed the warnings have tested positive for the COVID-19 virus. "Dozens more are under public health investigation." https://www.nbcnews.com/news/us-news/least-28-texas-spring-breakers-test-positive-covid-19-after-n1173231

It is clear that failing to act now could expose tens of thousands of people in prisons and jails across the country to the virus. Further, given the crowded nature of our correctional institutions, an outbreak is likely, and the probability of correctional staff and visitors picking up the virus and carrying it back into their communities could be high. The concept of "flattening the curve" is as important in a detention facility where people are unable to decide for themselves where and when to isolate, are not capable of obtaining disinfecting supplies, and are in even tighter quarters than those outside these facilities. In such a situation, it is perhaps even more important to be proactive in avoiding a catastrophe.

It is submitted that public officials should address this threat seriously. Among other possible suggestions, below are three (3) reasonable actions that corrections agencies could take:

1. Identify people who are scheduled to be released from prison or jail in the next six months and release them into home confinement, barring a specific reason against doing so. This is not a suggestion to carelessly unleash a flood of danger into the streets. Rather, we're talking about individuals who aren't considered to be public safety threats by correctional departments and parole boards.

2. Parole prisoners over the age of 65, with priority given to those who have underlying health conditions that make them particularly susceptible to the virus. Those considered for parole should be deemed unlikely to reoffend, but most will meet this standard anyway. The United States Sentencing Commission found that people in prison 65 or older recidivate at a rate of 13%, which is far lower than the national average of 68%.

3. Identify those who are non-violent offenders who can be on some form of home confinement pending the outcome of their case.

In the face of a nationwide coronavirus outbreak, the above are steps that could be taken. None of these common-sense measures would do anything to put society in harm's way. But they could spare thousands of hospitalizations, relieve pressure on our nation's strained medical resources and, most importantly, save lives.

People in prison or jail may have made bad decisions to wind up behind bars, but they're still human beings worthy of consideration during this medical

emergency. As our country braces itself for the coronavirus, we should make sure that those in the justice system are protected as well.

On March 13, 2020, the Federal Bureau of Prisons issued a notification that stated in-part,

> Effective immediately, the following national measures are being deployed by the BOP in order to mitigate the spread of COVID-19, acknowledging the United States will have more confirmed cases in the coming weeks and also noting that the population density of prisons creates a risk of infection and transmission for inmates and staff. These national measures are also being put in place to ensure the continued effective operations of the federal prison system and to ensure that staff remain healthy and available for duty.

**SOCIAL VISITS:** Social visits will be suspended for 30 days, at which time the suspension will be reevaluated.

**LEGAL VISITS:** "… legal visits will be suspended for 30 days, case-by-case accommodation will be accomplished at the local level and confidential legal calls will be allowed in order to ensure inmates maintain access to counsel. Attorneys seeking an in-person visit with their client or a confidential call should contact the institution Executive Assistant or contact the appropriate Consolidated Legal Center for the BOP institution. If approved for an in-person visit, the attorney will need to undergo screening using the same procedures as staff.

**INMATE MOVEMENT:** All inmate facility transfers will be suspended for 30 days, at which time the suspension will be reevaluated.

**OFFICIAL STAFF TRAVEL:** Official staff travel (with the exception of relocation) will be suspended for 30 days, at which time the suspension will be reevaluated.

**TRAINING:** All staff training, with the exception of basic staff training for new employees at the Federal Law Enforcement Training Center and the local facility, is suspended for 30 days at which time the suspension will be reevaluated.
**SCREENING OF STAFF:** "… Such screening includes self-reporting and temperature checks for the next 30 days, at which time the process will be reevaluated."
**SCREENING OF INMATES:** "… To address the specific issues involving COVID-19, the BOP uses the following practices: all newly-arriving BOP inmates are being screened for COVID-19 exposure risk factors and symptoms; asymptomatic inmates with exposure risk factors are quarantined, and symptomatic inmates with exposure risk factors are isolated and tested for COVID-19 per local health authority protocols.
**MODIFIED OPERATIONS:** For the next 30 days, the BOP will implement nationwide modified operations to maximize social distancing and limit group gatherings in our facilities.
Locally, as of March 15, 2020, FDC Miami has the following message on its website, "All visiting at this facility has been suspended until further notice."

Further, an article in the Miami Herald on-line edition of March 14, 2020, entitled Miami-Dade County Jail Staff and Inmates Affected as New Arrival Tested for COVID-19, reads in-part,

Some Miami-Dade Corrections staffers were sent home Saturday and inmates isolated while awaiting the COVID-19 testing results for a new arrestee, the agency said Saturday afternoon.
According to Miami-Dade Corrections public affairs manager Juan Diasgranados, the person arrived at Turner-Guilford Knight Correctional Center in Saturday's early hours. The person is in medical housing unit isolation while awaiting test results. As of now, there remain no confirmed cases of COVID-19 in any Miami-Dade Corrections facilities, the product of novel coronavirus.

Meanwhile, "precautionary measures have been initiated including the thorough sanitation of the processing area," Diasgranados said. "Other inmates who may have come into contact are also being isolated and monitored closely, and staff identified as having initial contact have been advised by their supervisor to stay home and monitor themselves for any signs or symptoms."

## **ARGUMENT**

Mr. BROWN has only one documented prior, a felony for which he has no conviction. The case at bar, while it has allegations of violence toward the alleged victims, is not in and of itself a violent case (the violence seems incidental to the charges), and there is no indication of any other prior or recent violent tendencies.. Mr. BROWN does not have an extensive history of failing to appear for court, with only one allegation of a failure to appear. Permitting him to be placed on house arrest with electronic monitoring pending the outcome of the case would place him and the entire jail system in a better position to battle this novel virus..

It is respectfully submitted that KERBY BROWN is a non-violent offender who deserves not to be placed in harm's way unnecessarily.


Based on the unusual situation in which the United States now finds itself, home arrest with electronic monitoring would be sufficient, but not greater than

necessary, to comply with the sentencing goals set forth in the State of Florida for pre-trial release.

**WHEREFORE**, Defendant, KERBY BROWN**,** respectfully prays that this Honorable Court enter its order granting the within Motion for Pre-trial release Based on Risk of Coronavirus, and provide that the Defendant be released on home arrest with the usual conditions imposed, including electronic monitoring.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via CM/ECF to the following: U.S. Attorney's Office, Cary O. Aronovitz, Esq., A.U.S.A, and Richard O.I. Brown, Esq. A.U.S.A. on this 1st day of April, 2020.

Respectfully submitted,

THE LAW OFFICES OF
FISHER & BUTLIEN P.A
520 NW 165TH STREET ROAD,
SUITE 106
MIAMI, FLORIDA 33169
(305) 899-5012
BY:___/s/ Joshua Fisher_____
    JOSHUA L. FISHER, ESQ.
    FLA. BAR NO: 0142360
    Email: Jfisher@Fishlawesq.com
BY:___/s/ Peter . Butlien_____
    PETER A. BUTLIEN, ESQ.
    FLA. BAR NO: 0574104

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 20-CR-60045-RS-1

THE UNITED STATES OF AMERICA,   )
                                )
    Plaintiff,                  )
                                )
vs.                             )
                                )
KERBY BROWN, JR.,               )
                                )
    Defendant.                  )
_____

### **PROPOSED ORDER ON DEFENDANT'S MOTION FOR PRE-TRIAL RELEASE**

THIS CAUSE, having come before the court, upon Defendant's Motion, and after hearing argument of counsel, and being fully apprised of the premises, it is

HEREBY ORDERED AND ADJUDGED that the Motion for Pre-trial Release is

_____ GRANTED.

IT IS HEREBY ORDERED AND ADJUDGED that the Defendant shall be released under the following conditions:

_____

_____.

_____ DENIED.

DONE AND ORDERED in the Southern District of Florida, Fort Lauderdale, Florida this _____ day of_____, 2020.

_____
RODNEY SMITH
UNITED STATE DISTRICT JUDGE