UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | Case No. 20-CR-60045 |
| | ) | Honorable William P. Dimitrouleas |
| **KERBY BROWN** | ) | |

**BROWN'S SENTENCING MEMORANDUM AND
REQUEST FOR A DOWNARD VARIANCE**

## **INTRODUCTION**

We submit this memorandum on behalf of Kerby Brown to urge the Court to impose a sentence of 144 months in prison, below the guideline range. Mr. Brown requests this downward variance in part because the advisory guideline range too severely over-represents Mr. Brown's conduct in this case, and because he has a history and personal characteristics that support a significant downward variance pursuant to 18 U.S.C. § 3553(a).

We propose a sentence by variance that will accomplish through incarceration the harsh punishment that society seeks, but that does not amount to the kind of crushing sentence that so many judges feel are excessive and profoundly unjust. A sentence for Mr. Brown of 144 months incarceration followed by a lengthy term of sex offender supervised release, with intensive sex offender treatment, would represent a harsh sentence given the facts of the case and Mr. Brown's personal history.

Such a sentence would be sufficient, but not greater than necessary, to vindicate the sentencing imperatives of 18 U.S.C. § 3553(a). S*ee Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Such a sentence would more than adequately reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and recognize that Mr. Brown is not a risk to recidivate. *See* 18 U.S.C. § 3553(a)(2).

Mr. Brown has faced adversity his entire life, from surviving a car accident as an infant that took the life of his mother and sister, to being homeless at age 15 while his father enjoyed a new life with a new family. Given Mr. Brown's profound remorse[1], need and desire to be rehabilitated, his unlikeliness to recidivate, the extreme penalty range under the applicable

---

[1] Mr. Brown will accept responsibility before the Court on the date of his sentencing.

sentencing guidelines and his personal characteristics and history, a significant downward variance is warranted.

I. **THE NEED FOR THE SENTENCE TO REFLECT THE SERIOUSNESS OF THE CRIME, PROMOTE RESPECT FOR THE LAW, PROVIDE JUST PUNISHMENT, ADEQUATE DETERRENCE, AND PROTECTION OF THE PUBLIC**

In addition to Mr. Brown's personal history and characteristics, a sentence of 144 months in prison is appropriate under 18 U.S.C. § 3553(a)(2). This section directs the Court to consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. Given Mr. Brown's acceptance of responsibility, his willingness to submit himself to rehabilitation, and the unlikeliness that he will recidivate, a lengthy prison sentence within the guidelines is not in the interest of justice.

Courts have "rejected the view that the interest in general deterrence could only be served by incarceration." *Prosperi*, 686 F.3d 32, 38. Acknowledging the importance of deterrence, this Court should weigh the benefit of incarceration against the costs of incarceration. Here, a lengthy term of imprisonment is not necessary to serve as adequate deterrence, because the many other punishments Mr. Brown has and will receive would be very significant to any person contemplating an offense similar to Mr. Brown. Mr. Brown has little risk of recidivism. Incarceration will incur a large cost to taxpayers, and an even larger personal cost to Mr. Brown by cutting off his access to the rehabilitative treatment from which he will greatly benefit. If the goals of sentencing are rehabilitation and community protection, undergoing intensive therapy to rehabilitate Mr. Brown is significantly more effective than incarceration.

## II. GUIDELINE CONSIDERATIONS AND NATURE OF THE OFFENSE

### A. Courts Are Not Bound to Follow Guidelines That Are Not Based on Empirical Science.

In making a sentencing determination, a sentencing judge must independently evaluate the appropriate sentence not only considering the purposes and factors of § 3553(a), but also arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations." *Rita v. United States*, 551 U.S. 338, 351 (2007). In evaluating such an argument, "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Id*.; *Nelson v. United States*, 129 S. Ct. 890, 892 (2009) (reversing the Fourth Circuit's ruling that "within-Guidelines sentences are presumptively reasonable"). Importantly, when the guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of the sentences that might achieve § 3553(a)'s objectives." *Kimbrough*, 552 U.S. at 109. Thus, in cases involving application of guidelines that do not exemplify the Commission's characteristic institutional role of careful study and empirical analysis, it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the Guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes," even in an ordinary case. *Id*. at 110.

Here, the advisory guideline range is disproportionately high compared with the offense conduct.

## B. Judicial Disagreement with the Sex Trafficking of a Minor Guidelines has Led to Downward Variances.

### 1. Sentencing Commission Data.

The truth of the matter is that the guidelines in sex trafficking of a minor cases have not kept pace with technology and are too harsh. The gaping disconnect between the guidelines and the technology used in the commission of the offenses leaves judges with outdated standards for guidance in sentencing these types of offenders. As demonstrated below, the result is judicial criticism of the rigidity of the guidelines through downward variances in sex trafficking of a minor cases.

### 2. District Courts Are Imposing Below Guidelines Sentences for Sex Trafficking of a Minor.

Recognizing that § 2G1.3 is not the result of the Sentencing Commission's exercise of its characteristic institutional role and that it often leads to excessive sentences, many district courts have imposed sentences below the Guidelines range for offenses involving the sex trafficking of a minor. For example:

- In *United States v. Roddey*, 17-CR-00019 (N.D. Florida 2017), the district court imposed a sentence of **144 months** to be followed by 10 years of supervised release.

- In *United States v. Coleman*, 17-CR-00019, (N.D. Florida 2017), the district court imposed a sentence of **120 months** to be followed by 10 years of supervised release.

- In *United States v. Templeman*, 21-CR-00019 (M.D. Florida 2021), the district court imposed a sentence of **160 months** incarceration to be followed by 10 years of supervised release.

- In *United States v. Algere*, 14-CR-00158, (M.D. Florida 2014), the district court imposed a sentence of **180** months incarceration to be followed by 10 years of supervised release.

District courts possess broad discretion to downwardly vary from the applicable guideline ranges after considering both the guidelines and the statutory factors in 18 U.S.C. § 3553(a).

Appellate courts must apply an abuse of discretion standard and, although they "may consider the extent of the deviation," they "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall v. United States*, 552 U.S. 38, 50–51 (2007). District courts frequently downward vary from significant guideline ranges to relatively lenient sentences in cases which defendants have been convicted

We ask the Court to follow its sister courts and craft a sentence that mitigates the excessive and unwarranted penalty range in this case.

### C. Nature of Brown's Offense.

The sentencing guidelines in this case severely over-represent the offense conduct. Mr. Brown's guideline range is enhanced by the use of a computer, a fact present in virtually every case of this kind. Adherence to the advisory guideline range would be inappropriate given the nature of Mr. Brown's offense. There is absolutely no evidence that Mr. Brown committed any type of sexual or physical crime against a minor. There is no history of Mr. Brown engaging in sexually abusive or predatory conduct. He has never committed a contact offense against a minor. Given the blatant lack of adaptability within the sex trafficking of a minor sentencing structure, this Court should grant a downward variance to mitigate a disproportionately severe sentence.

### III. PERSONAL HISTORY AND CHARACTERISTICS

Throughout his life, Kerby Brown has demonstrated the kind of personal characteristics that render him a good and caring person. As his sister summarizes:

> "He helped make me into the person I am today by telling me 'always do good with your life.' That's what he would tell me every time he saw me…I miss my brother

THE HORENSTEIN FIRM PA

- 6 -

so much, he was my role model who kept me out of trouble." *Letter from Kerbinique Brown*.

These characteristics are attested to in the six letters submitted by Mr. Brown's family. *See* Exhibit A, Compendium of Letters. These letters explain the many factors that set Mr. Brown apart from the typical defendant, providing a valid basis for the Court to vary downward. *See United States v. Tomko*, 562 F.3d 558, 560 (3d Cir. 2009) ("[s]everal dozen letters written on Tomko's behalf prior to his sentencing [ ] demonstrated Tomko's community ties and extensive charitable works."). In *Tomko*, the Third Circuit affirmed and concluded that the district court's reasons for a downward variance to a non-incarcerative sentence were "logical and consistent with the factors set forth in section 3553(a)." *Id*.

Similarly, these letters in support of Mr. Brown prove the wonderful traits he possesses, despite the negative snapshot of his life that was this case. They are far more instructive about him as a person than the significant (but uncharacteristic) errors that bring him before this Court. As described by the people who know him best, Mr. Brown is "loving," "good," "helping," "caring," "smart," kind," "respectful," and so much more.

Congress has directed that a defendant's personal characteristics should be considered equally with "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). Yet these factors are given no weight in the Guidelines calculation; indeed, the Guidelines recognize only the defendant's criminal record (providing for higher offense levels for a greater criminal history, rather than reductions for no prior record). "The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civil,
THE HORENSTEIN FIRM PA

charitable, or public service are...matters that § 3553(a) authorizes the sentencing judge to consider." *Rita*, 551 U.S. at 364-65; *See also United States v. Prosperi*, 686 F.3d 32, 39 & 45 (1st Cir. 2012) (affirming downward variance from 87-108 months to home detention because the loss numbers did not take into account the personal characteristics of the defendant); *United States v. Martin*, 520 F.3d 87, 93 (1st Cir. 2008) (affirming a 91-month variance down from the guideline range based in part on "the support that the defendant stood to receive from his family [and] personal qualities indicating his potential for rehabilitation"). Therefore, we urge the Court to balance the Guidelines calculations by giving fair and due consideration to the many characteristics that weigh heavily in favor of sentencing Mr. Brown to 144 months in prison.

**A. Brown's Strong Devotion to Others.**

All the letters submitted to the Court carry an overarching theme: Kerby Brown is a loving family member who demonstrates genuine care for all those in his family. Here are just a few specific, tangible examples of how Mr. Brown touched the lives of those around him:

- My brother has always been a helping hand in my life all the way from when I was a toddler to now, he has always helped me with anything I asked for [and] always made sure I was okay, he always did work around the house and took care of me whenever our parents were at work, my brother is a good person. *Letter from Kerbinique Brown*.

- Kerby Brown Jr. always helped out and cared for others. He played a major part in his siblings life. He was always a great kid despite the los[s] of his mother and sister at such an early age. He's very smart he also was on the A,B honor roll throughout school. *Letter from Felicia Seay*.

- KJ was kind and loving. When my mother was sick and I had to go to work he would have to stay with her to make sure she took her medicine and feed her until someone gets home. After my mom passed KJ helped me take care of my grandson Kamerin Brown. He would take him to school on his bicycle and pick him up, feed him and get him ready for bed because he knew when I get home I'm going to be so tired. He would say "aunti don't work about Kamerin I got him." Kerby is a kind and loving young man. I love him and miss him so much. I pray for him every day and every night. *Letter from Marsha Brown*.

- He was a very respectful kid growing up, very kind hearted before my mother passed away from cancer he was there helping my mom do stuff as a young kid, he is very kind hearted loves to help people. He was a honor roll student throughout school a very smart kid lived his life very respectfully "yes sir," "yes ma'am.". *Letter from Kerby Brown Sr.*

Despite the sensitive nature of the case, and his conduct, Mr. Brown's family continues to trust him and hold him in the highest regard. The thoughtful letters submitted to the Court make clear that Mr. Brown is known to be a deeply caring person who brought light to the lives of those he encountered.

We ask the Court to weigh this incredible support, along with the adversity Mr. Brown faced in his life, in fashioning a just and reasonable sentence.

## CONCLUSION

For the many reasons articulated above, Kerby Brown is not the typical offender. Importantly, Mr. Brown is not a pedophile. The letters submitted to the Court from Mr. Brown's family demonstrate that he has a number of redeeming personal characteristics including his intelligence and professional capabilities, and his strong network of support, which would contribute to his success and unlikeliness to re-offend. An application of the § 3553(a) factors demonstrates that a below-guidelines sentence of 144 months imprisonment is more than sufficient to reflect the seriousness of this offense, promote respect for the law, and to provide just punishment.

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate...the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). Here, Kerby Brown was convicted of child sex trafficking. He does not seek to justify, minimize, or explain away these actions. Mr. Brown recognizes the wrongfulness

of his conduct, has gained insight into the harm it caused, and possesses genuine remorse. Mr. Brown's dedication to rehabilitation is a positive indication of his commitment to refraining from future criminal conduct. Mr. Brown will do everything in his power to atone for his conduct.

Mr. Brown has already suffered serious consequences as a result of his actions. A conviction for child sex trafficking carries considerable stigma – Mr. Brown has a felony conviction on his record, his first, and will have to register as a sex offender. He has endured immense public shame for his offense. The mere fact of Mr. Brown's prosecution deters others from engaging in this sort of conduct, and a sentence of 144 months will act as a further deterrent to others contemplating such activity. The value of any longer sentence as a deterrent would be marginal at best. Given that the benefit to society of a lengthy incarceration would be negligible, any benefit is outweighed by the potential harm caused by the negative impact further imprisonment would have on Mr. Brown's treatment and his prospects of becoming a productive citizen

We ask only that the Court balance this improper behavior with the hardship that Mr. Brown has endured, and to consider his potential. These actions show that Mr. Brown is willing and able to be rehabilitated and is deserving of this Court's power of leniency.

We respectfully request that this Court sentence Kerby Brown to 144 months in prison.

October 17, 2022                               Respectfully submitted,

                                           **THE HORENSTEIN FIRM, P.A.**
                                           40 NW 3rd St.
                                           PH1
                                           Miami, Florida 33128
                                           Telephone (786) 444-2723


                                    By:     /s Bradley Horenstein


                                           **BRADLEY HORENSTEIN, ESQ.**
                                           *brad@thehorensteinfirm.com*
                                           Florida Bar No. 0096000
                                           *Counsel for Kerby Brown, Jr.*

## CERTIFICATE OF SERVICE

We certify that on October 17, 2022, my office electronically filed this pleading with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to the following:

Monica Castro
Email: Monica.Castro@usdoj.gov
U.S. Attorney's Office
99 N.E. 4th St.
Miami, Florida 33132
*Counsel for the United States of America*

By:   /s Bradley Horenstein
       **BRADLEY HORENSTEIN, ESQ.**
       *Counsel for Kerby Brown*