**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 20-CR-60045-RS(s)**

**UNITED STATES OF AMERICA**

**vs.**

**KERBY BROWN, JR.,**

**Defendant.**
_______________________________________/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America hereby submits this letter in advance of the defendant, Kerby Brown's sentencing. On August 11, 2022, a jury found the defendant guilty of all counts of a Superseding Indictment charging him with sex trafficking offenses against minors. As outlined in the Presentence Investigation Report ("PSR"), the defendant's applicable United States Sentencing Guidelines (the "Guidelines") range is 360 months to life imprisonment. As set forth more fully herein, the government respectfully requests that this Court deny defendant's motion for a downward variance and impose a Guidelines sentence of 420 months' imprisonment.

## FACTUAL BACKGROUND

Between November 2018 and May 2019, a period of just seven months, the defendant, sought to sell at least five minor girls in commercial sex. PSR ¶¶ 3, 6, and 14. The young women he targeted ranged from ages 14 to 17. Id. Two of them were also runaways and, as such, particularly vulnerable to the defendant's efforts to exploit them. Id. ¶¶ 4 and 8.

First, in November 2018, the defendant worked to recruit minors D.L. and J.J. for commercial sex work at a hotel party in a Fort Lauderdale hotel. Id. ¶ 3. D.L., who was just 15 years old at the time and eight years junior to the defendant, testified at trial. Id. ¶¶ 3 and 8. She

stated that Minor Victim 1 was a runaway who had been staying with her at the time, and noted she saw Minor Victim 1 at this hotel party with the defendant. Id. ¶ 4. D.L. testified that, during the party, the defendant and several others pushed her and J.J. to post photos of themselves on a "fucking website." Id. ¶ 5. She noted that the defendant was unphased when she and J.J. made clear they were minors and that Minor Victim 1 was even younger than them. Id. Rather than abandon his efforts, the defendant simply responded that the minors could still make money and specifically told them that Minor Victim 1 was already making money and they should too. Id. Indeed, the Defendant successfully posted a commercial sex advertisement offering Minor Victim 1 before she was recovered from the hotel where he was harboring her. Id. Both D.L. and a law enforcement officer who later recovered Minor Victim 1 from that hotel, described that advertisement at trial. Id.

Only two months later, between January and February 2019, the defendant sold Minor Victim 2 for commercial sex in Orlando, Florida and Fort Lauderdale, Florida. Id. ¶ 6. Like Minor Victim 1, 15-year-old Minor Victim 2 was a runaway when she encountered the defendant. Id. ¶ 8. Minor Victim 2 testified that she told the defendant she was only 15 years old and that they discussed that she was a runaway. Id. ¶¶ 7-8.

Significantly, it was Minor Victim 2's status as a runaway that opened the door for the defendant to lure her into performing commercial sex work at his direction. Text and Instagram messages show Minor Victim 2 telling the defendant she needed a place to stay, and the defendant reassuring her that he could give her a place to stay and she could just "go to school and that's it." Id. ¶ 8; Government's Exhibit ("GX") 86. However, Minor Victim 2 testified that, once she was staying with the defendant, he told her "nothing in life is free." PSR ¶ 8. Thereafter, once Minor

Victim 2 was relying on the defendant for a place to stay, the defendant told Minor Victim 2 she needed to contribute to expenses by selling herself in commercial sex. Id. The Defendant posted online sex advertisements for Minor Victim 2, arranged and transported her to commercial sex acts, harbored her in hotel rooms, and collected her earnings. Id. ¶ 6.

Minor Victim 2 engaged in commercial sex acts at the defendant's direction in both Orlando, Florida and Fort Lauderdale, Florida. Id. She forfeited the majority of proceeds from these commercial sex acts directly to the defendant, who coordinated each encounter. Id. ¶ 6. The advertisements the defendant posted of Minor Victim featured explicit images of Minor Victim 2 taken at the defendant's direction and instructed interested parties to call the defendant's phone number. Id.; PSR ¶ 9; GX 49A-F and 49H. At least one of the touted Minor Victim 2's adolescence, stating she had only recently lost her virginity. GX 49D.

Amongst the exhibits at trial was a voice recording where the defendant discussed Minor Victim 2 with a coconspirator, stating: "The bitch is fucking for money. Other than that shit, ain't nothing for me." PSR ¶ 11. The coconspirator later reminded the defendant "she's young" and cautioned him that he should treat Minor Victim 2 better because "she makes [him] money." Id. ¶ 12; GX 47E-1. In other discussions, the defendant repeatedly bragged that he was a "pimp," specifying he was the type of person who "will sell you." PSR ¶ 17; GX 80C-1, 80C-8, 80C-13.

The defendant was arrested in May 2019 during a sex trafficking operation after he delivered his adult female coconspirator for a commercial sex act with an undercover officer. PSR ¶ 13. He was quickly detained despite attempting to flee. Id. ¶ 13. In the car the defendant was driving, law enforcement found yet another minor, 17 year-old T.S. Id. ¶ 14. The only possessions T.S. had with her were a cellular telephone and purse containing condoms. Id.

After his arrest, a recorded call captured the defendant and his coconspirator discussing the fact that they should have sent T.S. to the meeting with the undercover officer, stating, in essence, that T.S. was ready to work. Id. ¶ 16. The conversation demonstrated that the defendant had conspired to cause T.S. to engage in commercial sex work. In the same discussion, the defendant referred to "every other hoe" he and his coconspirator had dealt with, again establishing that the defendant was hardly new to exploiting women. Id. Indeed, in a recording recovered from T.S.'s phone, the defendant proudly proclaimed "as much pimping as I did . . . I've never been in a situation where I can't get a bitch to work right."

Based on the outlined offenses, on August 11, 2022, a federal jury found defendant guilty of (1) conspiracy to commit sex trafficking of a minor between November 21, 2018 and May 23, 2019; (2) attempted sex trafficking of Minor Victim 1 between November 21, 2018 and November 24, 2018; and (3) sex trafficking of Minor Victim 2 between January 25, 2019 and February 13, 2019.

## GUIDELINES RANGE

The government agrees with the Guidelines calculations determined by probation according to the Final Addendum to the PSR, which are outlined below. ECF No. 190-2.

| As to Victim D.L. | | |
|---|---|---|
| Base Offense Level (§ 2G1.3(a)(2)) | 30 | 0 units (§ 3D1.4(c)) |
| **As to Victim J.J.** | | |
| Base Offense Level (§ 2G1.3(a)(2)) | 30 | 0 units (§ 3D1.4(c)) |
| **As to Victim T.S.** | | |
| Base Offense Level (§ 2G1.3(a)(2)) | 30 | 0 units (§ 3D1.4(c)) |
| **As to Minor Victim 1** | | |
| Base Offense Level (§ 2G1.3(a)(2)) | 30 | |
| Use of a Computer (§ 2G1.3(b)(3)(B)) | +2 | |
| Total Adjusted Offense Level | 32 | 1/2 unit (§ 3D1.4(b)) |

| As to Minor Victim 2 | | |
|---|---|---|
| Base Offense Level (§ 2G1.3(a)(2)) | 30 | |
| Minor was Under Defendant's Care, Custody, or Control (§ 2G1.3(b)(1)(B)) | +2 | |
| Undue Influence (§ 2G1.3(b)(2)(B)) | +2 | |
| Use of a Computer (§ 2G1.3(b)(3)(B)) | +2 | |
| Commission of a Sex Act (§ 2G1.3(b)(4)(A) | +2 | |
| Vulnerable Victim (§ 3A1.1(B)(1)) | +2 | |
| Total Adjusted Offense Level | 40 | 1 unit (§ 3D1.4(a)) |
| **Offense Level for All Counts** | | |
| Group with Highest Offense Level | 40 | |
| 1.5 units (§ 3D1.4(a)) | +1 | |
| **Final Adjusted Offense Level** | 41 | |

The government also agrees with probation's determination that the defendant is a Criminal History Category III, resulting in a Guidelines range of 360 months to life imprisonment.

## ARGUMENT

The defendant requests a sentence of 144 months—216 months below the bottom of the advisory Guidelines range of 360 to life. ECF No. 187 at 1. Such a sentence would not adequately address the goals of sentencing in a case where a defendant repeatedly sought to exploit minors for his own financial gain. The government submits that a 420-month sentence would be sufficient, but not greater than necessary, to achieve the goals of sentencing. In particular, such a sentence is warranted to address (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant, and (3) the need for specific and general deterrence. See 18 U.S.C. § 3553(a).

A. The Nature and Circumstances of the Offense

The nature and seriousness of the defendant's crimes cannot be overstated, as they were perpetrated against multiple minor victims between the ages of 14 and 17. For a number of reasons, the law punishes crimes against minors more severely than crimes against adults.

Teenagers are more vulnerable than adults; they are more easily manipulated and coerced because they lack the intelligence and judgment of adults; teenagers are more easily frightened and are less likely to report crimes; and crimes against teenagers are more likely to have a lasting and damaging impact on the young minds and bodies of the victims. See United States v. Hughes, 652 F.3d 956, 962 (6th Cir. 2011) (noting the special vulnerabilities of children). Lining one's pockets by causing a minor to engage in commercial sex is a heinous crime with far-reaching consequences for victims. Such crimes should have equally significant consequences for defendants who perpetrate them.

The government also disagrees with the defendant's assertion that his Guidelines range "severely over-represents" his conduct. ECF No. 187 at 6. To the contrary, the evidence at trial established several aggravating factors that counsel against a downward variance. First and foremost, it is beyond question that the offense conduct is far from an anomaly for the defendant. In just the 7-month period captured at trial, the defendant sought to exploit at least five minor girls, the youngest of which was only 14 years old. This fact readily distinguishes the instant case from those the defendant cites in favor of a downward variance, where the defendants were only convicted of sex trafficking offenses against a single minor. United States v. Roddey, 17-CR-00019 (N.D. Florida 2017) ECF No. 102; United States v. Coleman, 17-CR-00019, (N.D. Florida 2017) ECF No. 32; United States v. Templeman, 21-CR-00019 (M.D. Florida 2021) ECF No. 1; United States v. Algere, 14-CR-00158, (M.D. Florida 2014) ECF Nos. 67 and 6.

Here, the defendant targeted multiple young girls, and he did so with a brazen indifference to their age or the law. As noted by D.L., the defendant was completely unphased when she told him she was only 15 years old. He was equally unconcerned with the fact that Minor Victim 2

was only 15, callously referring to her as just a "bitch" whose value to him was simply that she is "fucking for money." Despite such admissions, the defendant urges this Court to find mitigation in his claim that he never committed "a contact offense" against minors. ECF No. 187 at 6. The defendant is not deserving of a lesser sentence because he sold Minor Victim 2 to multiple strangers who used her for their own sexual gratification instead of having sex with her himself.

Another aggravating factor here is that, in addition to Minor Victim 2's youth, the defendant took advantage of her vulnerability as a runaway. The messages between the defendant and Minor Victim 2 show that he knew she had no place to stay. Seizing upon that, the defendant falsely held himself out as a safe haven. He reassured Minor Victim 2 that he would provide free housing and she could just go to school. However, once he knew she was relying on him for daily necessities like food and shelter, he told her she needed to earn money by having sex with strangers. The defendant's willingness, as a 23-year old man, to manipulate a 15 year old girl who found herself with no one else to turn to, is predatory behavior that rightly resulted in Guidelines enhancements, and merits a severe sentence.

B. <u>The History and Characteristics of the Defendant</u>

The government further notes the defendant finds himself in a higher Guidelines range not only because of his offense conduct, but also because he is in a Criminal History Category III. That is, he does not come before this Court an otherwise law-abiding citizen. As already noted, the evidence of this case refutes that assertion. But, even setting aside the defendant's trafficking offenses, the defendant has also demonstrated a propensity for violence, having sustained a conviction for acting as the gunman in an armed robbery in November 2016. PSR ¶ 69.

The defendant's conduct in the course of his arrest on the instant case also demonstrated his general disregard for the law. The defendant not only fled law enforcement, but saw fit to threaten to kill a law enforcement officer that helped effectuate his arrest. PSR ¶ 70. Consistent with that demeanor, the defendant did not express the remorse following his arrest that he purports to harbor now. To the contrary, he lamented not having sent in yet another minor to complete the commercial sex date that led to his arrest, and made casual reference to the "other hoes," he had dealt with. Such language again establishes the defendant as a repeat offender and highlights the need for specific deterrence.

C. The Need for Both Specific and General Deterrence

While the defense asserts that the defendant is at low-risk to reoffend, the evidence showed the defendant was proud to proclaim himself a pimp and made statements demonstrating had been acting in that capacity for some time. Thus, the requested sentence is necessary to deter the defendant from again engaging in such behavior.

Likewise, general deterrence is significant in sex trafficking cases, where victims are often reluctant to speak to law enforcement and where, as Congress recognized in enacting the sex trafficking statute, "traffickers often escape deserved punishment." United States v. Estrada-Tepal, 57 F. Supp. 3d 164, 169 (E.D.N.Y. 2014) (quoting legislative history and discussing legislative goals in enactment of 18 U.S.C. § 1591). Due to the immaturity of victims and their vulnerability to threats and coercion, it is often difficult to detect and punish sex trafficking crimes. Because the financial rewards of such crimes can be great, and the risk of being discovered and punished are easily minimized, the sentences of those who are successfully prosecuted must be substantial. See, e.g., United States v. Heffernan, 43 F.3d 1144, 1149 (7th Cir. 1994)

("Consideration of (general) deterrence argues for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."). Indeed, commercial sex is frequently glorified through music and other media, and the defendant himself seemed proud to carry the title of "pimp." Because of this, a message should be sent to society generally and the defendant specifically that treating minors like property to be sexually exploited and profited from will be severely punished.

## CONCLUSION

Based on the foregoing, the government respectfully requests that the court deny the defendant's motion for a downward variance and impose a sentence of 420 months imprisonment.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By: *<u>/s/ Monica K. Castro</u>*

Monica K. Castro
Assistant United States Attorney
Court ID. A5502776
99 NE 4th Street, 6th Floor
Miami, Florida 33132
Tel: (305) 961-9013
Monica.Castro@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, on November 17, 2022.

s/ *Monica K. Castro*
Monica K. Castro
Assistant United States Attorney