**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

February 10, 2025

FILED BY JG D.C.
Feb 10, 2025
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 22-14056-HH
Case Style: USA v. Kerby Brown, Jr.
District Court Docket No: 0:20-cr-60045-RS-1

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

Enclosure(s)

MDT-1 Letter Issuing Mandate

In the

# United States Court of Appeals

For the Eleventh Circuit

---

No. 22-14056

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KERBY BROWN, JR.,
a.k.a. K.J.
a.k.a. Slime,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cr-60045-RS-1

---

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: January 10, 2025

For the Court: DAVID J. SMITH, Clerk of Court

ISSUED AS MANDATE: February 10, 2025

[PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

____________________

No. 22-14056

____________________

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KERBY BROWN, JR.,
a.k.a. K.J.,
a.k.a. Slime,

Defendant-Appellant.

____________________

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cr-60045-RS-1

---

Before WILLIAM PRYOR, Chief Judge, and JORDAN and MARCUS, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether sufficient evidence supports convictions of conspiracy to commit child sex trafficking and attempted child sex trafficking, whether the district court erred in admitting a conspirator's phone records and communications, whether continuances related to the coronavirus pandemic and changes in defense counsel violated the Speedy Trial Act, and whether the district court erred when it refused to strike the jury venire after it read an earlier version of the indictment and then corrected its error. Kerby Brown Jr. was charged with one count each of conspiracy to commit, attempted, and child sex trafficking. *See* 18 U.S.C. §§ 1591(a)(1), (b)(2), 1594(a), (c). A grand jury indicted Brown in early 2020, but the pandemic and a series of continuances delayed his trial until August 2022. The jury convicted Brown on all counts. We affirm because Brown fails to establish that a reversible error occurred.

## I. BACKGROUND

In the fall of 2018, Minor Victim 1 was 14 years old and homeless. On November 20, 2018, she stayed in a hotel room in Hollywood, Florida, with Kerby Brown Jr. Over the next few days, Minor Victim 1 took several photographs of herself in that hotel room, including at least one with Brown. On November 23, she

invited her friend, Child Witness, to a party at the hotel. When Child Witness and two other minor girls arrived, Brown, two women, and another man were in a hotel room with Minor Victim 1. When the girls entered the room, they observed needles and pills "all over the table."

Brown and "[t]he white lady" began asking the girls if they "want[ed] to work" or "want[ed] to make money." The woman showed the girls a website and explained that the girls would "take pictures of [their] bod[ies], post [them], and then people [would] come meet [them] at the hotel." Brown said that Minor Victim 1 was "making money" and explained that once the teenagers signed up, "[his] girls" would "show [them] what to do," and that men would come have sex with them for money. The girls informed Brown that they were minors, but he dismissed their concerns about age "because [they] were just making money." Child Witness understood that Brown was recruiting the girls to be prostitutes. Someone showed Child Witness a prostitution advertisement for Minor Victim 1 that had the same "backdrop" as the photographs she had taken of herself earlier that week. During this interaction, the other man took Minor Victim 1 into the next room. The girls got scared and left the hotel, but they could not locate Minor Victim 1 before leaving.

The next day, Child Witness and the other girls "decided that [they] had to get [Minor Victim 1] out of the hotel," so Child Witness called her mother and described what had happened. Child Witness's mother agreed that they needed to rescue Minor

Victim 1, and the group returned to the hotel later that day. On the drive there, Child Witness called the police and told them where to meet the group.

When the group arrived at the hotel, Child Witness contacted Minor Victim 1 and asked her to meet in front of the hotel. Minor Victim 1 stepped outside as Officer Michael Ryder arrived. Child Witness told Officer Ryder, "my friend's up there getting prostituted and she's on drugs, and she don't even know she's getting prostituted right now." One of the group's members showed Officer Ryder a prostitution advertisement for Minor Victim 1. During this exchange, Brown left the hotel, spotted Officer Ryder and the group, and ran back inside.

In January 2019, Minor Victim 2 was 15 years old and homeless. Brown told Minor Victim 2 that he could book a hotel room for her, and she could "just go to school and the room." Brown knew that Minor Victim 2 was 15 years old. Soon after their initial contact, Brown picked up Minor Victim 2 and took her to a hotel in Fort Lauderdale, Florida. Heidy Archer, whom Minor Victim 2 knew as "Lala," was there. Although Brown did not ask Minor Victim 2 for any money that first night, he told her that "[n]ot everything in life is for free." Minor Victim 2 did not go to school during this time.

Brown, Archer, and another woman took Minor Victim 2 to Orlando. When they arrived, Brown initiated a conversation about Minor Victim 2 "having sex with men for money." They discussed how pictures of Minor Victim 2 would be posted on a website with

the abbreviation "P4P," or "pay for play," which meant that the viewer could pay for sex. Minor Victim 2 testified that she felt that she could not say no because she feared "being out on the streets" and she had nowhere else to stay. Archer and the other woman were present while Brown explained the setup to Minor Victim 2. When Minor Victim 2 agreed to the plan, the two women, at Brown's direction, took nude photographs of Minor Victim 2 to use in the advertisement. The women gave Brown the photos to post, and an advertisement was posted.

After the photographs were posted, Brown told Minor Victim 2 that a man "was going to come pick [her] up." That man met Minor Victim 2 and had sex with her. The man paid Minor Victim 2, and she gave the money to Brown. Brown orchestrated the prices, the meetings, and any transportation for Minor Victim 2; managed the responses to the advertisement; and screened potential clients to ensure that they were not law enforcement officers. Brown organized three or four commercial sex dates with Minor Victim 2 during the trip to Orlando.

Brown and the women took Minor Victim 2 back to Fort Lauderdale and stopped along the way so that men could have sex with her. In early February, Archer admonished Brown to treat Minor Victim 2 better because she made him money. After the group returned to Fort Lauderdale, the adults left Minor Victim 2 alone, and she asked a friend to pick her up and escaped.

Meanwhile, the Hollywood Police Department alerted the Federal Bureau of Investigation that Brown had reportedly sex

trafficked Minor Victim 1. Bureau agents, with Minor Victim 1's permission, searched her phone and located the photographs of her and Brown together at the hotel in November 2018. The Bureau organized an undercover operation. An agent located a commercial sex advertisement for Archer, and an undercover officer with the Hollywood Police contacted the number listed on the advertisement and arranged a meeting at a hotel in the hope that Brown would arrive with Archer. Federal agents and local police prepared to arrest Brown at the hotel. At the meeting time, a vehicle entered the parking lot. Brown drove, Archer was a passenger, and a third minor was in the backseat. When police surrounded the vehicle, Brown fled on foot. Police chased Brown and arrested him.

On February 13, 2020, a grand jury indicted Brown on one count of conspiracy to commit sex trafficking of a minor, 18 U.S.C. §§ 1591, 1594(c), for conduct related to unnamed Minor Victims 1, 2, and 3; two counts of attempted sex trafficking of a minor, 18 U.S.C. §§ 1591, 1594(a), for his conduct related to Minor Victim 1 and Minor Victim 3; and one count of sex trafficking of a minor, 18 U.S.C. § 1591(a)(1), (b)(2), for his conduct related to Minor Victim 2.

A series of motions and intervening circumstances delayed Brown's trial. First, on February 28, 2020, Brown, while represented by counsel, moved *pro se* to dismiss the indictment based on the Speedy Trial Act, 18 U.S.C. § 3162(a)(2). The district court denied that motion based on Southern District of Florida Local Rule 11.1(d)(4), which provides that "[w]henever a party has

appeared by attorney, the party cannot thereafter appear or act on the party's own behalf in the action or proceeding, or take any step therein, unless an order of substitution shall first have been made by the Court." On March 17, 2020, Brown moved to continue the trial because he had switched counsel and the new attorney needed time to prepare. The district court granted that continuance and excluded the resultant days under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7).

Then the coronavirus pandemic interrupted court proceedings. The district court entered a series of continuances based on corresponding administrative orders, stating that "in light of the public health emergency, the interest[s] of justice require the Court to take additional steps to protect the health and safety of the public," and excluding the resultant days. The administrative orders delayed all jury trials from March 30, 2020, to at least July 6, 2021, because "the ends of justice served by taking that action outweigh[ed] the interests of the parties and the public in a speedy trial." *See, e.g.*, S.D. Fla. Admin. Order 2021-33, at 2. Amid these orders and continuances, the district court entered another continuance without specifying the reason, but it later noted that the days covered by that continuance were also covered by the administrative orders for the pandemic.

On April 26, 2021, shortly after the last pandemic order, the parties submitted a joint motion to continue. The district court granted that order in "the ends of justice" and excluded the resultant days. On June 7, 2021, at a status conference, defense counsel

requested another continuance. The district court granted that request in the ends of justice and excluded the resultant days.

On July 6, 2021, the government submitted an unopposed motion to continue because the most recent change of trial dates conflicted with the prosecutor's planned travel. The district court granted that order on July 14, 2021, without explanation, continuing the trial date by eight days from September 27, 2021, to October 5, 2021. Brown submitted another *pro se* motion to dismiss on the ground that more than 70 unexcluded days would elapse by the start of trial in violation of the Speedy Trial Act. The government responded, and the district court denied Brown's motion because the challenged days had been tolled such that even if the days resulting from the most recent continuance were not excluded from the Speedy Trial calculations, only 36 unexcluded days would have elapsed by the trial date.

On September 17, 2021, new defense counsel submitted another motion to continue, which the district court granted in the ends of justice with excluded time. On September 27, 2021, Brown submitted another *pro se* motion to dismiss, which the district court struck because Brown was represented by counsel. On January 20, 2022, Brown's counsel moved to continue again. The district court granted that motion without stating its reasons, but later specified that the continuance served the ends of justice and excluded the relevant days. On February 14, 2022, Brown filed yet another *pro se* motion to dismiss, which the district court struck because "[t]he Eleventh Circuit 'has held repeatedly that an individual does not

have a right to hybrid representation.'" *See Cross v. United States*, 893 F.2d 1287, 1291–92 (11th Cir. 1990).

On April 26, 2022, Brown submitted his final *pro se* motion to dismiss. The district court denied that motion because nothing had changed to justify dismissal since the last motion, and it explained that Brown's "repetitive" *pro se* motions to dismiss had no merit.

Brown again switched counsel, and on May 16, 2022, defense counsel moved to continue. The district court granted that motion in the ends of justice and excluded the relevant days. Finally, at a calendar call on June 28, 2022, defense counsel "advised [that Brown] re-entered quarantine" the day before, and the parties jointly requested a continuance to August 8, 2022. The district court granted that request in the ends of justice and excluded the relevant days.

Amid these motions and continuances, the government filed a superseding indictment, which made two changes to the charges against Brown. First, it amended the conspiracy charge to omit any specific mention of individual minor victims. Second, it dropped the attempted sex-trafficking count related to Minor Victim 3.

Brown's trial began on August 8, 2022. At the beginning of the trial, the district judge read the conspiracy charge from the original indictment, which enumerated three minor victims. The prosecution immediately interrupted him, and the judge started over by reading the superseding indictment. Brown moved to strike the jury venire. The district court denied that motion but offered to

give a curative instruction. Brown declined that offer, but the district court instructed the jury that the indictment "isn't evidence of guilt."

During the trial, the government sought to introduce exhibits from Heidy Archer's phone. Brown objected that the evidence was irrelevant, more prejudicial than probative, included evidence of other crimes, lacked foundation, and included hearsay. The district court overruled these objections and admitted the exhibits.

The district court denied Brown's motion for judgment of acquittal on counts one and two. The jury convicted Brown on all counts. The district court sentenced Brown to 360 months of imprisonment.

## II. STANDARDS OF REVIEW

Several standards govern our review. We review a denial of a motion for judgment of acquittal based on the sufficiency of the evidence *de novo*, but we "view all evidence in the light most favorable to the government, resolving any conflicts in favor of the government's case." *United States v. Watts*, 896 F.3d 1245, 1250–51 (11th Cir. 2018). "A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *Id.* at 1251 (citation and internal quotation marks omitted). We review evidentiary rulings for abuse of discretion. *United States v. Henderson*, 409 F.3d 1293, 1297 (11th Cir. 2005). And we review unpreserved challenges under the Confrontation Clause, U.S. CONST. amend. VI, for plain error. *United States v. Jiminez*, 564 F.3d 1280, 1286 (11th Cir. 2009).

We review a district court's application of its local rules for abuse of discretion. *United States v. McLean*, 802 F.3d 1228, 1233 (11th Cir. 2015). We review a claim under the Speedy Trial Act *de novo*, but we "review a district court's factual determinations on excludable time for clear error." *United States v. Williams*, 314 F.3d 552, 556 (11th Cir. 2002); *accord United States v. McCutcheon*, 86 F.3d 187, 190 (11th Cir. 1996) ("The district court's factual determination as to what constitutes excludable time is protected by the clearly erroneous standard of review."). We review the "determination whether to strike an entire jury [venire] for manifest abuse of discretion." *United States v. Grushko*, 50 F.4th 1, 10 (11th Cir. 2022) (citation and internal quotation marks omitted).

## III. DISCUSSION

We divide our discussion into four parts. First, we explain that sufficient evidence supported Brown's convictions for conspiracy to sex traffic a minor and attempted sex trafficking of a minor. Second, we explain that the district court did not abuse its discretion in admitting records and communications related to Heidy Archer's phone. Third, we explain that the denial of Brown's repeated *pro se* motions to dismiss did not violate the Speedy Trial Act. Finally, we explain that the district court did not abuse its discretion in denying Brown's motion to strike the jury venire.

*A. Sufficient Evidence Supported Brown's Convictions for Conspiracy to Commit and Attempted Child Sex Trafficking.*

Brown was convicted of conspiracy to commit child sex trafficking. 18 U.S.C. §§ 1591, 1594(c). Section 1594(c) states that anyone who "conspires with another to violate section 1591 shall be fined . . . , imprisoned for any term of years or for life, or both." Section 1591, in turn, specifies the punishments for anyone who "knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . knowing . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act." To prove a conspiracy, the government must prove beyond a reasonable doubt that "(1) two or more persons agreed to violate § 1591, (2) [Brown] knew of that conspiratorial goal, and (3) he voluntarily assisted in accomplishing that goal." *United States v. Mozie*, 752 F.3d 1271, 1287 (11th Cir. 2014), *superseded by statute on other grounds*, 18 U.S.C. § 1591(c). "The existence of an agreement may be inferred from the participants' conduct," *id.*, and the agreement "may be proven by circumstantial evidence, including inferences from th[at] conduct" or other evidence, *United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005) (citation and internal quotation marks omitted).

Brown argues that the district court erred in denying his motion for judgment of acquittal on the conspiracy count because "there was no evidence of an agreement between Brown and any potentially alleged co-conspirator" and "no evidence of a

conspiratorial scheme or intent to join it." The government responds that there was sufficient circumstantial evidence for a reasonable jury to infer that an agreement existed between Brown and Archer "to persuade or maintain at least one minor to engage in commercial sex." We agree with the government.

At trial, the government presented two key witnesses who testified to Archer's involvement with Brown: Minor Victim 2 and a federal agent who was present when Brown was arrested. Minor Victim 2 testified that Brown and Archer transported her from Fort Lauderdale to Orlando together and that Archer participated in creating and posting the advertisement featuring Minor Victim 2 by taking the photographs of her and by sending them to Brown so that he could make the advertisement. Even after learning that Minor Victim 2 was 15 years old, Archer continued to supervise the girl. That testimony would permit a reasonable jury to infer that Brown and Archer had an agreement to commit child sex trafficking. *See Mozie*, 752 F.3d at 1287 (describing an agreement and knowledge of the goal of that agreement as the first two elements of a conspiracy). And Minor Victim 2 testified that Archer acted at Brown's direction, which allowed the jury to infer that Brown voluntarily joined the conspiracy. *See id.*

The federal agent also testified about seeing Archer and Brown together with another minor. Brown drove Archer to the undercover meeting with a 17-year-old in the backseat. Brown and Archer's continued association and the continued association with

minors also supports the jury's finding that the two conspired to commit child sex trafficking.

Brown was also convicted of attempted sex trafficking of a minor. 18 U.S.C. §§ 1591, 1594(a). Section 1594(a) provides that "[w]hoever attempts to violate . . . [section] 1591 shall be punishable in the same manner as a completed violation of that section." To prove attempt, the government need prove only that the defendant acted with "the specific intent to engage in the criminal conduct for which he is charged" and that the defendant "took a substantial step toward commission of the offense." *United States v. Murrell*, 368 F.3d 1283, 1286 (11th Cir. 2004).

Brown challenges both elements of the attempt conviction. He argues that, because no one testified that they saw Brown and Minor Victim 1 directly interact and no one testified that Brown himself prepared or posted the prostitution advertisement of Minor Victim 1, there was insufficient evidence to support the attempt conviction. We disagree.

Child Witness testified that she found Minor Victim 1 sequestered in a hotel room with Brown and several other adults, and that there were needles and pills "all over the table." While there, Brown asked the girls if they would like to "make money" like Minor Victim 1 and explained the process of signing up for a prostitution website, taking photographs, having sex with men, and getting paid. Someone showed Child Witness a prostitution advertisement for Minor Victim 1, which featured photos taken in the same hotel room. When Child Witness, her friends, her mother, and the police

came back to rescue Minor Victim 1 the next day, Child Witness told the police officer that Minor Victim 1 was on drugs and did not know what was happening to her. Child Witness's testimony presented sufficient evidence to allow a reasonable jury to infer that Brown had the specific intent to traffic Minor Victim 1 and that he took a substantial step—propositioning the girls—toward that goal.

*B. The District Court Did Not Abuse Its Discretion by Admitting Evidence About Heidy Archer's Phone.*

Brown challenges the admission of the records related to Heidy Archer's phone, labeled Exhibit 47. At trial, he challenged the admission of that exhibit under Federal Rules of Evidence 403, 404, and 802. On appeal, he makes only a passing reference to Rules 403 and 404. So he abandons any challenge to the relevance of those documents or their admission to prove intent or another permissible purpose. *See Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 681 (11th Cir. 2014). As for Rule 802, Brown challenges the admission of portions of Exhibit 47 on the ground that statements in the record constitute hearsay. But we disagree; each statement either is not hearsay or satisfies an exception to the prohibition of hearsay.

Federal Rule of Evidence 802 prohibits the introduction of hearsay at trial. "Hearsay" is a statement by an out-of-court declarant introduced "to prove the truth of the matter asserted." FED. R. EVID. 801(c). But, when "offered against an opposing party," neither statements made by the opposing party, *id*. R. 801(d)(2)(A), nor

statements "made by the party's coconspirator during and in furtherance of the conspiracy" are hearsay, *id*. R. 801(d)(2)(E). To admit a statement under Rule 801(d)(2)(E), "the government must prove by a preponderance of the evidence" that "(1) a conspiracy existed; (2) the conspiracy included the declarant and the defendant against whom the statement is offered; and (3) the statement was made during the course and in furtherance of the conspiracy." *United States v. Magluta*, 418 F.3d 1166, 1177–78 (11th Cir. 2005) (citation and internal quotation marks omitted). "In determining the admissibility of co-conspirator statements, the trial court may consider both the co-conspirator's statements and independent external evidence." *Id.* at 1178 (citation and internal quotation marks omitted). And among the exceptions to the prohibition of hearsay in Rule 802, Rule 803(6) permits the admission of business records, including cell phone data. *See United States v. Sanchez*, 586 F.3d 918, 928–29 (11th Cir. 2009) (holding that district court did not abuse its discretion in admitting cell phone data).

Each statement Brown challenges either fits under one of the hearsay exceptions or is not hearsay. First, many of the exhibits are admissible under Rule 803(6) as business records. Exhibits 47A, F, G, and H are an extraction report from the cell phone, records of the cell phone numbers and emails for Archer's phone, and call logs associated with her phone. It was not an abuse of discretion to admit those business records under Rule 803(6). *See id.* Similarly, Exhibits 47L through P are photographs from Archer's phone with location data, photographs of her cell phone, and another extraction report of cell phone data. There are no statements contained

in the photographs, and to the extent that the location data and the extraction report are "statements," they also satisfy the business-records exception. *See id*.

Second, Exhibit 47C is a transcript of an audio message recording Brown's statements to Archer. It is not hearsay under Rule 801(d)(2)(A) because it is a statement of a party opponent. And Exhibit 47E-1 contains many messages from Brown to Archer, which are admissible for the same reason.

Third, Exhibit 47D is a series of text messages between Archer and Minor Victim 2. The messages include a series of images, short messages discussing where the two speakers are, and mentions of "[S]lime"—Brown's alias. There was ample evidence that Archer was Brown's coconspirator in the child sex trafficking conspiracy. *See Magluta*, 418 F.3d at 1177–78. The district court reasonably could have found that these discussions of location and coordination were in furtherance of the conspiracy, as they suggest that Archer helped to manage Minor Victim 2's whereabouts and activities. The district court did not abuse its discretion in admitting Archer's statements under Rule 801(d)(2)(E), and the messages from Minor Victim 2 to Archer provide context to Archer's statements and were not introduced for the truth of the matter asserted and are not hearsay.

Fourth, Exhibit 47J is a log of text messages on Archer's phone. Because none of the messages were introduced for the truth of the matter asserted, the district court did not abuse its discretion in admitting them.

Finally, Exhibit 47E-1 is a 13-page excerpt from Exhibit 47E that contains a series of text messages between Brown and Archer in early February 2019. Archer's messages in this exhibit fall into three categories. Page one up to the last message on page four, the first message on page five, pages six and seven, the first message on page eight, and pages nine through thirteen establish only the relationship between Brown and Archer and were not introduced for the truth of the matters asserted. The last message on page four and the remaining messages on page five discuss "a 15yr old," and Archer's accusation that Brown had sex with that 15-year-old, Minor Victim 2. These messages were also not introduced for the truth of the matters asserted but instead establish that Brown and Archer knew that Minor Victim 2 was 15.

Only the rest of the messages on page eight, which discuss Minor Victim 2 and that someone had gotten her a phone, remain. They also include two messages from Archer to Brown admonishing him to treat Minor Victim 2 better because "[s]he makes [him] money." Those messages in furtherance of the conspiracy concern the maintenance of Minor Victim 2 while Brown and Archer trafficked her. The district court did not abuse its discretion in admitting this page of Exhibit 47E-1.

Brown also argues that the admission of these exhibits violated the Confrontation Clause of the Sixth Amendment. Brown did not raise this argument below, so we review for plain error. *Jiminez*, 564 F.3d at 1286. Plain error review requires Brown to establish that "(1) there is an error; (2) that is plain or obvious;

(3) affecting [his] substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (citation and internal quotation marks omitted).

Brown cannot prove an error, plain or otherwise. The Confrontation Clause prohibits the admission of only "testimonial" hearsay—"solemn declaration[s] or affirmation[s] made for the purpose of establishing or proving some fact." *Crawford v. Washington*, 541 U.S. 36, 51 (2004) (citation and internal quotation marks omitted). Statements are testimonial if "in light of all the circumstances, viewed objectively, the primary purpose of the conversation was to create an out-of-court substitute for trial testimony." *United States v. Hano*, 922 F.3d 1272, 1287 (11th Cir. 2019) (alteration adopted) (citation and internal quotation marks omitted). "Only statements of this sort cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis v. Washington*, 547 U.S. 813, 821 (2006). And "a casual remark to an acquaintance" does not "bear[] testimony." *See Crawford*, 541 U.S. at 51. None of the statements in Exhibit 47 were testimonial, so Brown can prove no confrontation error.

### *C. The District Court Did Not Err in Denying Brown's* Pro Se *Motions to Dismiss the Indictment under the Speedy Trial Act.*

Under the Speedy Trial Act, an accused is entitled to a trial date within 70 days of his indictment or arraignment. 18 U.S.C. § 3161(c)(1), (d)(1). Certain days, however, may be excluded from the 70-day count, including "delay[s] resulting from a continuance

. . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A). District judges may consider several factors in determining whether a continuance is in "the ends of justice," including whether it would prevent "a miscarriage of justice" or ensure "adequate preparation for pretrial proceedings" or "reasonable time necessary for effective preparation" for either the defense or the prosecution, "among other[]" factors. *Id.* § 3161(h)(7)(B).

The district court must state its reason for granting a continuance on the record, "either orally or in writing." *Id.* § 3161(h)(7)(A). It can make those findings when it enters the continuance or before it rules on the merits of a motion to dismiss. *See Zedner v. United States*, 547 U.S. 489, 506–07 (2006). If a defendant fails to move for dismissal on Speedy Trial grounds before trial, that failure "constitute[s] a waiver of the right to dismissal" under the statute. 18 U.S.C. § 3162(a)(2).

The district court denied or struck most of Brown's motions to dismiss not on the merits of his Speedy Trial claims, but instead because his *pro se* motions violated Southern District of Florida Local Rule 11.1(d)(4). That local rule prohibits *pro se* filings when the defendant is represented by counsel. *See* S.D. FLA. LOC. R. 11.1(d)(4). The district court denied two of those motions expressly for violating the local rule. In denying another of Brown's motions, the district court cited circuit precedent confirming the logic of the local rule, and it noted that Brown was "represented

by private counsel." *See Cross*, 893 F.2d at 1291–92. And in denying Brown's final motion, the district court explained that it "st[ood] on its previous rulings" on Brown's "repetitive" motions and noted that "nothing ha[d] changed to justify" dismissal. Brown has not established that the district court "made a clear error of judgment" in denying these motions based on Brown's *pro se* filings. *See McLean*, 802 F.3d at 1233 (noting that the challenging party bears the burden to show clear error in a district court's application of its local rules).

The district court considered the merits of only one of Brown's *pro se* motions to dismiss. In that motion, Brown argued that the attorneys "taking vacation" did "not support . . . a continuance in a speedy trial petition." Brown contended that his Speedy Trial clock should have restarted at the end of the pandemic continuances on July 6, 2021. He also asserted that before the district court entered the most recent continuances, 109 Speedy Trial days would have elapsed by the anticipated trial date. The government's response outlined the number of unexcluded days that had elapsed since Brown's indictment and stated that only 36 Speedy Trial days would have elapsed by the new trial date. The Speedy Trial calculations included the previous continuances that Brown had not validly challenged and that were granted to serve "the ends of justice," as well as the pandemic excluded days. The district court adopted the government's calculations and denied the motion to dismiss.

The district court did not clearly err in calculating the number of Speedy Trial days that had elapsed since Brown's indictment.

As outlined in the government's response to Brown's motion, as of the July 14, 2021, order, the only unexcluded days were February 13, 2020, to February 28, 2020, (15 days) and March 4, 2020, to March 17, 2020, (13 days). On March 17, 2020, Brown moved to continue, and the district court granted that motion, continuing Brown's trial until May 11, 2020. And the parties agreed below that the period from March 30, 2020, to July 6, 2021, was excluded under the administrative orders, although the government asserted that the pandemic exclusions continued into September. The period from July 6, 2021, to September 13, 2021, was excluded in "the ends of justice" upon joint motion by the parties because ongoing pandemic issues continued to present availability challenges. And the period from September 13, 2021, to September 27, 2021, was excluded in "the ends of justice" because defense counsel had only been granted access to meet with Brown in person the day the continuance was entered. So, even if we were to assume that the eight days from the July 14 continuance were not excludable, 36 days would have elapsed by the new trial date. Because the district court did not clearly err in its finding that fewer than 70 unexcluded days would elapse by the trial date, it did not err in denying Brown's motion to dismiss.

*D. The District Court Did Not Abuse Its Discretion by Denying Brown's Motion to Strike the Jury Venire.*

Criminal defendants are entitled to "a panel of impartial, indifferent jurors." *Murphy v. Florida*, 421 U.S. 794, 799 (1975) (citation and internal quotation marks omitted). But jurors are entitled to a

presumption of impartiality. *See id.* at 800. To overcome that presumption, the party seeking to strike the venire must prove "actual bias." *See United States v. Khoury*, 901 F.2d 948, 955 (11th Cir. 1990) (citation and internal quotation marks omitted). To make that showing, the moving party must point to "an express admission of bias[] or proof of specific facts showing . . . that bias must be presumed." *Id.* (citation and internal quotation marks omitted) The trial judge has discretion whether to strike the venire. *United States v. Tegzes*, 715 F.2d 505, 508–09 (11th Cir. 1983).

Brown contends that the district judge "inject[ed] bias and prejudice into the jury" when he read the first count of the original indictment, instead of the superseding indictment, and that he abused his discretion in denying Brown's motion to strike the venire. The original indictment charged Brown with conspiracy to sex traffic a minor and specified that Brown conspired to traffic "persons, that is, *Minor Victim 1, Minor Victim 2, and Minor Victim 3*." The superseding indictment lacked any specific reference to the individual victims; it instead stated that Brown conspired to traffic "by any means *a person*." Brown suggests that, by reading "Minor Victim 3" into the trial record, the district judge introduced the possibility that Brown's crimes involved more than the two minor victims addressed in the substantive counts and that there may have been additional substantive counts related to those unmentioned victims.

Brown's theory fails to suggest any actual bias on the part of the jury. *See Khoury*, 901 F.2d at 955. Even if the district court raised

the possibility of additional victims, the government's argument about the conspiracy highlighted at least three minor victims—Minor Victim 1, Minor Victim 2, and the minor in the back of the car when Brown was arrested—that Brown targeted during the conspiracy. And Child Witness testified that Brown and several other adults tried to recruit her and two of her friends to sign up for their prostitution website. So the jury heard about at least six minors that Brown targeted. As for the inference that some deleted substantive counts may have addressed conduct related to Minor Victim 3, Brown presents no evidence that the jury considered any such counts.

Moreover, the district judge instructed the jury that "[t]he indictment is not to be considered as evidence" and that the indictment "isn't evidence of guilt." Because jurors are presumed to follow these instructions, *Grushko*, 50 F.4th at 14, the instructions cured any potential bias introduced by mentioning Minor Victim 3. *Cf. United States v. Peters*, 435 F.3d 746, 753 (7th Cir. 2006) (finding that an instruction "that the indictment was not evidence[] . . . weigh[ed] against finding plain error"). Without specific evidence of bias, we cannot say that the district court manifestly abused its discretion in denying Brown's motion to strike. *See Grushko*, 50 F.4th at 14 (finding no reversible error where the district court's discussion during jury instructions "was unnecessary, unwise and should have been avoided").

## IV. CONCLUSION

Brown's convictions are **AFFIRMED**.

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

January 10, 2025

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 22-14056-HH
Case Style: USA v. Kerby Brown, Jr.
District Court Docket No: 0:20-cr-60045-RS-1

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing. Among other things, **a petition for rehearing must include a Certificate of Interested Persons**. See 11th Cir. R. 40-3.

Costs
No costs are taxed.

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |